IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
WESTERN DIVISION

UNITED STATES OF AMERICA

V.                                CRIMINAL NO. 5:23-CR-2-DCB-LGI

TOMMY PINEDA-GUEVARA

ORDER

BEFORE THE COURT is Defendant Tommy Pineda-Guevara's ("Defendant") Motion to Suppress Evidence ("Motion") [ECF No. 21]. The Court held a hearing on July 25, 2023, during which the Court heard the testimony of one state trooper involved in the traffic stop, reviewed the trooper's dashboard camera footage, and heard the arguments of counsel. Having conducted an evidentiary hearing, and having reviewed all submissions of the parties, the video admitted into evidence at the hearing [ECF No. 26-2], applicable statutory and case law, and being otherwise fully informed of the premises, the Court finds as follows:

I.     Factual & Procedural Background

On September 1, 2022, a State Trooper J. Beard conducted a traffic stop on Defendant while Defendant travelled northbound in the left lane of the divided four-lane Interstate Highway 55 ("I-55") in Pike County, Mississippi. [ECF No. 26] at 1. During the traffic stop, the trooper smelled burning marijuana and

ordered Defendant out of the vehicle. Id. at 2. The trooper searched the vehicle and found a semiautomatic rifle on the rear passenger seat and a backpack that contained 170 grams of marijuana and paraphernalia. Id. Subsequent investigation revealed that Defendant is an unlawful alien from Honduras. Id.

On March 7, 2023, a Grand Jury indicted Defendant for Possession of a Firearm by an Illegal Alien, in violation of 18 U.S.C. §§ 922(g)(5)(A) and 924(a)(8). [ECF No. 4]. On June 5, 2023, Defendant filed the instant Motion. [ECF No. 21].

II.  Standard

"The Fourth Amendment provides that '[t]he right of the people to be free in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated....'" Bond v. United States, 529 U.S. 334, 120 S.Ct. 1462, 1464, 146 L.Ed.2d 365 (2000) (quoting U.S. Const. amend. IV). Though the Fourth Amendment "says nothing about suppressing evidence," the prudential "exclusionary" rule may be used to suppress the evidence where the remedy would deter future Fourth Amendment violations. Davis v. United States, 131 S.Ct. 2419, 2426-27 (2011).

An investigatory stop, however, does not violate the Fourth Amendment if it is supported by "reasonable suspicion." United States v. Arvizu, 534 U.S. 266, 273 (2002). These investigatory

stops are commonly referred to as "Terry stops" because the rule derives from the case of that name, Terry v. Ohio, 392 U.S. 1 (1968).

The reasonable suspicion inquiry is both qualitative and quantitative; it depends "upon both the content of information possessed by police and its degree of reliability." Alabama v. White, 496 U.S. 325, 330 (1990). A law enforcement officer acts with reasonable suspicion if, based on the totality of the circumstances, she has "a particularized and objective basis for suspecting the particular person stopped of criminal activity." United States v. Cortez, 449 U.S. 411, 417–18 (1981). Reasonable suspicion "is a low threshold, requiring" only a "minimal level of objective justification[.]" United States v. Castillo, 804 F.3d 361, 367 (5th Cir. 2015) (quoting United States v. Sokolow, 490 U.S. 1, 7 (1989) (internal quotation marks omitted)).

"When the government searches or seizes a defendant without a warrant, the government bears the burden of proving, by a preponderance of the evidence, that the search or seizure was constitutional." United States v. Guerrero-Barajas, 240 F.3d 428, 432 (5th Cir. 2001).

III. Legal Analysis

Defendant requests that the Court suppress the firearm seized by law enforcement during its warrantless search on

3

September 1, 2022, as fruit of the poisonous tree based on what he claims was an unconstitutional Terry stop. [ECF No. 21]. Defendant alleges that the trooper lacked reasonable suspicion to execute the Terry stop. Id. at 1-3. The Government alleges that Defendant violated Mississippi law by cruising in the left lane of I-55. [ECF No. 26] at 6-7. Mississippi law proscribes cruising in the left lane of a highway with limited exceptions. Miss. Code Ann. §§ 63-3-603 & 63-3-609. Passing a vehicle that is travelling in the right lane is, of course, an exception, and Defendant claims he was actively passing an 18-wheeler at the time of the traffic stop. Id.; [ECF No. 21] at 2.

The Court granted an evidentiary hearing on the Motion so that it could review the footage of the traffic stop to determine whether the trooper lacked the necessary reasonable suspicion to initiate the traffic stop. At this hearing, the Court heard the testimony of Trooper J. Beard and reviewed the footage that depicts the traffic stop. Trooper Beard testified that he first noticed that Defendant's vehicle emitted a white light from its rear. Beard then testified that Defendant was cruising in the left lane, and this led him to conduct a Terry stop on Defendant.

The video footage of the stop corroborated the trooper's testimony that the taillight did not have the traditional and

4

lawful plastic cover and Defendant's presence in the left lane of the highway. [ECF No. 26-2]. The footage also showed the existence of an 18-wheeler in the right lane, though significantly behind Defendant's vehicle in the left lane. Id. The footage begins 31 seconds before Trooper Beard activated his blue cruiser lights. At that time, Defendant's vehicle was moving far ahead of the 18-wheeler in the left lane. The Government, in closing argument, pointed out that the Defendant's vehicle would have travelled one half a mile before the trooper's blue lights were activated. This is true if both vehicles were traveling 60 miles per hour.

The question that the parties present to the Court is whether it was reasonable for Trooper Beard to effect a Terry stop on Defendant given that the footage shows that it is likely that Defendant at one point had passed the 18-wheeler yet remained in the left lane up to the point that Trooper Beard pulled Defendant over.

Defendant argued at the evidentiary hearing that 31 seconds, as depicted from the start of the footage, is insufficient time to switch from the left lane to the right upon overtaking and, as such, the Government has failed to prove that Trooper Beard possessed the necessary reasonable suspicion to execute the stop. The Government argued that the inquiry is

whether the footage shows that it would have been reasonably safe for the Defendant to return to the right lane after overtaking the 18-wheeler.

At all times in the minute or so from the beginning of the footage to the instant in which Defendant complies and pulls over to the right of the highway, Defendant was far past the right-lane-travelling 18-wheeler. Miss. Code Ann. § 63-3-609(a) provides that overtaking vehicles should not return "to the right side of the roadway until safely clear of the overtaken vehicle." Miss. Code Ann. § 63-3-603(2)(a) prohibits left lane travel except, as relevant to this case, when "[o]vertaking and passing another vehicle proceeding in the same direction…" These two statutory passages lead the Court to understand that time alone cannot dictate when an overtaking vehicle must return to the right lane, but that the return should be made when "safely clear of the overtaken vehicle." Miss. Code Ann. § 63-3-603(2)(a).

Given the distance between Defendant's vehicle and the 18-wheeler at all points of the footage, the Court finds that the 18-wheeler's presence in the right lane could not have rendered Defendant's return to the left lane as anything shy of "safely clear." Id. Further, although the stop occurred late at night, nothing about nighttime darkness appears to have made a

6

prospective lane change unsafe. Defendant could have safely returned to the right lane before or at the time Trooper Beard initiated the traffic stop. Therefore, Trooper Beard possessed the required reasonable suspicion of illegal activity necessary to execute a constitutional traffic stop on Defendant, which ultimately led to the discovery of the marijuana and firearm. Arvizu, 534 U.S. at 273.

IV. Conclusion

For the foregoing reasons, the Defendant's Motion [ECF No. 21] shall be DENIED.

ACCORDINGLY,

IT IS HEREBY ORDERED that the Defendant's Motion to Suppress Evidence [ECF No. 21] is DENIED.

SO ORDERED, this 2nd day of August, 2023.

/s/ David Bramlette
DAVID C. BRAMLETTE
UNITED STATES DISTRICT JUDGE